Ann. Cas. 1915A, 671; Duffie v. Bankers' Life Association, 160 Iowa, 19, 139 N. W. 1087, 46 L. R. A. (N. S.) 25. But the question so presented is not involved in a case where, as here, the action is upon a contract and not for the recovery of damages. Upon the evidence in the case we think the plaintiffs were entitled to recover upon the policy.

The judgment is reversed, and the cause is remanded for a new trial.

---

**BOARD OF COM'RS OF FRANKLIN COUN.
TY, OHIO, v. DAVIS, Director General of Railroads.**

(Circuit Court of Appeals, Sixth Circuit.
June 10, 1925.)

No. 4242.

1. **Counties** ⚖=152 — **Power of commissioners under Ohio statute to contract for elimination of grade crossings defined.**

Gen. Code Ohio, §§ 8863-8871, conferring plenary power on a board of county commissioners to eliminate railroad grade crossings outside of municipalities, and to pay not exceeding 35 per cent. of the cost of the improvement, cover the entire subject-matter, and section 5660, restricting the power of the commissioners to enter into contracts of a general nature involving the expenditure of money, and requiring the certificate of the auditor that the money is in the treasury, or in process of collection, or is to be derived from an authorized issue of bonds, has no application.

2. **Counties** ⚖=127—**Modified contract made by commissioners held valid and binding.**

Where a contract for work to eliminate a grade crossing was made by resolution of the county commissioners, and accepted by the railroad company, each to pay a part of the cost, a subsequent modification of the contract, increasing the cost, also by resolution, and acted on by the railroad company, though not formally accepted in writing, *held* valid and binding on the county.

3. **Counties** ⚖=174 — **Commissioners held to have power to increase bond issue.**

Under Gen. Code Ohio, §§ 8863-8871, authorizing county commissioners to cause elimination of grade crossings and to pay a part of the cost, where bonds issued by them to meet the estimated cost of the improvement to the county proved insufficient, owing to unexpected increase in the cost of such work, due to war conditions, they had power to make an additional issue.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

7 F.(2d)—3

Action at law by James C. Davis, Director General of Railroads, against the Board of County Commissioners of Franklin County, Ohio. Judgment for plaintiff, and defendant brings error. Affirmed.

James C. Davis, as Director General of Railroads, brought action to recover from the county commissioners of Franklin county, Ohio, the sum of $12,315.13, with interest thereon from June 15, 1915, for balance due on Franklin county's share of the costs of eliminating a grade crossing where the tracks of the Hocking Valley Railway Company crossed two public highways at grade in Franklin county, Ohio, and outside a municipal corporation. A demurrer to the petition was overruled, and, the board of county commissioners not desiring further to plead, judgment was entered against the county for the amount claimed.

The petition avers, in substance, that the board of county commissioners legally adopted and published a preliminary resolution declaring the necessity of this improvement; that on February 19, 1917, not less than 30 days nor more than 90 days after the passage of the first resolution, the board of county commissioners adopted a second resolution, declaring its determination to proceed with the improvement, which resolution contained, in addition to the terms and conditions, the plans and specifications for the proposed elimination of this grade crossing, and further provided that the railroad company should pay 65 per cent. and the county of Franklin should pay 35 per cent. of the total cost and expenses, which in no event should exceed the estimate approved by the county commissioners of Franklin county, the county surveyor, and county auditor of Franklin county, Ohio. This resolution also declared that the compensation and damages claimed, or that might be claimed, by adjoining proprietors, should be determined at a later date, and assessed after the improvement was made, the amount of such compensation and damages to be considered as a part of the total cost of the crossing and approaches; that on March 24, 1917, the board of directors of the Hocking Valley Railway Company accepted the terms and provisions of this second resolution, and the agreement so made was filed in the common pleas court of Franklin county; that the board of county commissioners issued bonds to provide funds for this improvement to the amount of $114,000; that the railway company proceeded to let contracts for the work and material

necessary to complete the improvement, other than concrete classes E, F, G, and H, in items 50, 51, and 53, as described in the specification for the work; that this work was in progress on December 31, 1917, when the government of the United States took over the operation and control of the Hocking Valley Railway, including this construction work.

The petition further alleges that the board of county commissioners later adopted a resolution changing the original plans and specifications and providing for the construction of a bridge over Smoky Row road for the benefit of the Buckeye Steel Castings Company, in accordance with an agreement dated June 6, 1918, by and between the board of county commissioners, the Buckeye Steel Castings Company, the Hocking Valley Railway Company, and the Chase Foundry & Manufacturing Company, one of the claimants for damages mentioned in the second resolution, which contract provided for the settlement and adjustment of these damages including counsel fees; that by reason of these changes the cost of this improvement was largely increased; that the Director General proceeded with this work in accordance with this later resolution of the board of county commissioners, changing the original plans and specifications in accordance with the contract of June 6, 1918, but by reason of the uncertainty in the cost of labor and material, and the difficulty in procuring the same, the engineer in charge, acting for and on behalf of the Director General of Railroads, was unable to let the portions of the work heretofore mentioned; that to meet this situation the county commissioners on July 13, 1918, adopted a resolution reciting the report of the chief engineer of the railway company that these contracts could not be let for the concrete classes E, F, G, and H, in items 51, 52, and 53, except upon a cost plus basis, and declaring that said board concurred in the matter of letting contracts for this part of the work to the Fritz-Rumer-Cooke Company, at its bid of actual cost of pay rolls plus 15 per cent. on labor, plus liability insurance, and on actual cost of material plus 10 per cent. In pursuance of this resolution, the Director General of Railroads entered into this contract and completed the improvement at a total cost of $353,127.34. Of this amount the Chase Foundry & Machine Company paid $683.79, the Buckeye Steel Castings Company $14,505.44, and the board of county commissioners paid all of the 35 per cent. of the total cost, except $12,839.43, which represents 35 per cent. of the increase cost over the estimate.

It is claimed on behalf of the plaintiff in error that the court erred in overruling its demurrer to the petition, for the reason that it fully appears from the allegations thereof that the county's share of the cost of the improvement was determined and fixed by the contract resolution of December 22, 1916, on which bonds were issued and sold in the amount of $114,000; that any modification of that contract calling for the expenditures of money in excess thereof should have been entered into with the same formalities as required by the original contract and as provided by section 8863 et seq., General Code; that the county has no° lawful authority to issue further bonds for the payment of its share of the increased cost of this improvement occasioned by change in the specifications and modification of the original contract, for the reason that the money necessary to pay such increased cost was not provided by a bond issue, and no certificate was made or filed by the county auditor that the money was in the treasury unexpended and otherwise unappropriated to the credit of the fund from which the expenditure was to be made.

Joseph A. Godown, of Columbus, Ohio (John R. King, of Columbus, Ohio, on the brief), for plaintiff in error.

John F. Wilson, of Columbus, Ohio (Wilson & Rector, of Columbus, Ohio, on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] Sections 8863 to 8871, inclusive, of the General Code of Ohio, confer plenary power upon the board of county commissioners to eliminate grade crossings where railroads cross public highways at grade outside of municipalities. The only limitation upon this power is that the county shall not be required to pay more than 35 per cent. of the total cost of the improvement. These sections of the Ohio statute do not require that the county auditor shall certify that the money necessary for the payment of the county's proportion of the cost of the improvement is in the treasury to the credit of the fund from which it is to be drawn, or that a levy be made and placed on the duplicate and in the process of collection, or that the necessary money is to be derived from lawfully authorized bonds sold and in the process of delivery, before a valid

contract for the elimination of a grade crossing can be made by the board of county commissioners. On the contrary, section 8870, General Code, contemplates that bonds shall be issued for the purpose of raising money to pay the county's proportion of the cost after, and not before, the making of the contract for such improvement. For this reason section 5660, General Code of Ohio, has no application to the specific proceedings' authorized by the sections of the Ohio statutes first above mentioned.

Nor is it contended on the part of the plaintiff in error that section 5660 of the Ohio Code, restricting the power of county commissioners to enter into contracts of a general nature involving the expenditure of public money, has any application to the original contract made and entered into between the county of Franklin and the Hocking Valley Railway Company. On the contrary, the claim is made that this section applies only to the subsequent resolutions adopted by the board of county commissioners, increasing the cost of the improvement beyond the original estimate by reason of change of plans and specifications, and by consenting that contracts for certain parts of the improvement should be let upon a cost plus basis. This claim is not tenable. Sections 8863 to 8871, inclusive, General Code, specifically cover the whole subject-matter of the elimination of grade crossings. For this reason the subsequent resolutions adopted by the board of county commissioners, changing the plans and specifications and authorizing and consenting to the letting of the contract for the performance of a part of this improvement upon a cost plus basis, are not void for failure to comply with the provisions of section 5660, General Code. City of Akron et al. v. Dobson, 81 Ohio St. 66, 78, 90 N. E. 123; Emmert v. Elyria, 74 Ohio St. 185, 78 N. E. 269.

Counsel for plaintiff in error cite and rely largely on the decision of the Supreme Court of Ohio in the case of Carthage v. Diekmeier, 79 Ohio St. 323, 87 N. E. 178. In that case the village council had issued bonds in the sum of $40,000 for the improvement of 18 streets. This was not one improvement, but 18 separate proceedings for 18 separate improvements. Separate contracts were made with reference to the improvement of each street. The contract there in suit related to the improvement of Linden avenue only. While there was only one bond issue, yet it is clear that the fund arising from the sale of these bonds for the improvement of 18 streets was not a fund arising from the sale of bonds for the particular purpose of the improvement of Linden avenue only. In this respect the facts were wholly different from the facts involved in City of Akron et al. v. Dobson, supra, and Emmert v. Elyria, supra.

The cases cited above fully present every phase of the many decisions of the Supreme Court of Ohio in reference to the application of restrictive statutes to contracts under authority of the general statutes of the state, involving the expenditure of public money. These restrictive statutes, however, can have no application to special proceedings had under authority of a particular statute or statutes which specifically authorize a board of county commissioners,- or other like board, to enter into a valid contract involving the expenditure of money for the specific purpose named in the statute, without any certificate by the county auditor and before any tax is levied or any provisions made for the issuing of bonds to pay the county's share of the cost of the improvement. Under such circumstances no certificate could issue and no money could be derived from lawfully authorized bonds then sold and in process of delivery, or from a tax then levied, placed on the duplicate, and in the process of collection.

[2] It is further claimed that any modification of the original contract should have been entered into with the same formalities as required by the original contract. That is exactly what was done in this case. The original contract consisted of the resolution adopted by the board of county commissioners and accepted by the railway company. The contract modifying the original contract, or rather changing the plans and specifications, and the method of letting contracts by the railway company for the completion of this improvement, consisted of resolutions by the board of county commissioners accepted by the Director General of Railroads. It is true that this acceptance was not evidenced in writing, and the acceptance and the resolution filed in the common pleas court of the county in which the crossing is located; nevertheless the improvement was completed by the Director General in accordance with the terms of these subsequent resolutions. The provision that such contracts shall be filed in the common pleas court of the county is directory only. Lloyd v. Toledo, 20 Ohio Cir. Ct. R. (N. S.) 47; City of Columbus v. Bohl, 1 Nisi Prius (N. S.) 469. The common pleas court is not required to approve such contract or make any order whatever in reference thereto.

If it were, the statute in this respect would probably be unconstitutional. Stockwell v. Railway Co., 18 N. P. (N. S.) 29.

[3] It is also clear that the board of county commissioners did not exhaust its power to issue further bonds by reason of the fact that it directed an issue of bonds in the sum of $114,000 with which to meet the monthly estimates upon the contract. The sections of the Ohio Code authorizing the board of county commissioners to make such improvements do not limit or control its discretion as to the amount of money that may be expended, other than that the county shall pay no more than 35 per cent. of the actual cost. This resolution provided that the county should pay 35 per cent. of the total cost. It is true that it later provided that the total cost should not exceed the approved estimate, but it also further appears that compensation and damages, which were to be included as part of the costs, had not then been ascertained, and, so far as it appears by this petition, were not included as a part of the original estimate. Section 8871, General Code, authorizes the commissioners to assess compensation and damages before the beginning or after the completion of the proposed crossing improvement.

This statute evidently contemplates the issuing of further bonds to pay the county's share of compensation and damages, when the total amount thereof has been definitely ascertained. The provision in this resolution that the total cost should not exceed the estimate is not required by the statute. If there were no such provision therein written, and no change whatever had been made in the contract, it would hardly be contended that the board of county commissioners would have no authority to issue further bonds in case the total cost exceeded the estimate.

The power conferred upon the board of county commissioners by the sections of the statutes to which reference is above made is not limited or restricted in any manner, except in reference to the portion of the total cost the county may be required to pay. This power was not exhausted by the adoption of the original plans and specifications, but, on the contrary, the board of county commissioners had authority, in the absence of statutory limitation, to change or modify these plans and specifications when, in its opinion such change was required to meet a situation in the nature and progress of the work that was neither understood nor contemplated when the contract was made. Randolph v. Post, 93 U. S. 502,

23 L. Ed. 957; Dillon, Municipal Corporations (5th Ed.) vol. ——, p. 1235; McQuillin, Municipal Corporations, vol. 4, p. 136; Atlantic City v. Warren Bros. et al., 226 F. 372, 141 C. C. A. 202.

For the reasons stated, the judgment of the District Court is affirmed.

---

## ORTON v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1925.)

No. 4232.

**1. Negligence** &#61;62(1) — **When intervening cause is "proximate cause" of injury stated.**

The general rule is that, if a new and independent force, acting in and of itself, intervenes, causing an injury, it will be regarded as the "proximate cause."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**2. Railroads** &#61;304 — **When obstruction of highway crossing permissible stated.**

Under the law of Ohio, a railroad company has the right to occupy a highway crossing for its legitimate purposes, and while so occupying it at night is not required to maintain lights on its cars.

**3. Railroads** &#61;335(5)—**Negligence of automobile driver held proximate cause of collision with cars on crossing.**

Plaintiff was injured by collision of an automobile, in which he was riding as a passenger at night, with cars of defendant railway company, standing upon a highway crossing. The road was straight, the night was dark but not rainy or foggy and the lights of the automobile were burning brightly. Act Ohio May 14, 1921 (109 Ohio Laws, p. 219), required automobiles to carry lights which would disclose substantial objects on the highway ahead for a distance of at least 200 feet, and the driver of a following car testified that he saw the standing cars when 165 feet away. *Held* that, assuming defendant's negligence in permitting the cars to stand upon the crossing, that was merely a condition, and that the proximate cause of the collision and injury was the negligence of the driver of the automobile.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Harry Orton against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Luther Day, of Cleveland, Ohio (Day & Day, of Cleveland, Ohio, and M. R. Smith, of Conneaut, Ohio, on the brief), for plaintiff in error.